Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Charles C. Sanders, for appellants.

Charles C. Nadal, for respondent.

INGRAHAM, J. The question upon this appeal is substantially the same as that presented in Casualty Co. v. F. W. Seagrist, Jr., Co. (decided herewith) 80 N. Y. Supp. 277. The only additional fact to which attention should be called is that it is alleged by the defendants that they have dissolved partnership, and that all of their books and papers relating to the copartnership business were turned over to the F. W. Seagrist, Jr., Company more than three years before this application was made. It appears, however, that the corporation succeeded to the business of the copartnership, and that the members of this copartnership are executive officers of the corporation. The defendants do not allege that these books are not under their control, or that there is any real obstacle in the way of their compliance with the order appealed from. We think, however, that the order is too broad, and that it should be modified by requiring the defendants to produce the cashbooks, timebooks, and timesheets used by them during the period covered by the policies of insurance, to wit, from March 21, 1895, to March 21, 1896, and from May 1, 1896, to May 1, 1898, and as modified affirmed, without costs of this appeal. All concur.

---

(78 App. Div. 379.)

SWENSON v. METROPOLITAN ST. RY. CO.

(Supreme Court, Appellate Division, First Department. January 23, 1903.)

1. SERVANT—INJURIES—ELEVATORS—INSPECTION.
   Where defendant maintained an elevator in its street car barn for the purpose of lifting street cars from one floor to another, and the only evidence of inspection was that of one of defendant's witnesses, who testified that he was in the habit every week of going around the elevator and looking at it, and going on a ladder and observing the wheels and the drums and oiling the machinery, but had not used the hammer test on the gear wheel which subsequently broke for more than a year prior to the accident, a finding that the inspection was inadequate was proper.

2. SAME—QUESTION FOR JURY.
   Defendant street railway company maintained a car elevator in its barns, the elevator being provided with a track connecting with other tracks on the different floors, and the cars being moved by defendant's employés. Plaintiff, an employé, was injured by the fall of the elevator, caused by the breaking of a cable and a gear wheel. It was shown that, if the cable alone had broken, the elevator would simply have sagged a few inches, and defendant contended that the breaking of the gear wheel was the result of a blowhole in the metal constituting a hidden defect. Plaintiff, however, contended that the break was due to a crack in the wheel, which was patent, and might have been ascertained by a proper inspection. Held, that the cause of the break was for the jury.

Appeal from trial term, New York county.

Action by Charles Swenson against the Metropolitan Street Railway Company. From a judgment in favor of plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PAT-
TERSON, O'BRIEN, and LAUGHLIN, JJ.

C. F. Brown, for appellant.
W. E. Benjamin, for respondent.

PATTERSON, J. On the 5th of November, 1898, the plaintiff
was an employé of the defendant, and worked in a building on Sec-
ond avenue and Ninety-Sixth street, in the city of New York, which
was used as a depot for the storage of cars. In that building was
an elevator for hoisting cars to the upper floors. It was a platform
elevator, 30 feet long, or more. There were tracks on the platform,
which connected with tracks on the floors of the building. On the
date mentioned, the plaintiff was ordered by the defendant's superin-
tendent to assist in pushing a car from the track on the elevator to
the track on the second floor of the building. While engaged in
that work, and after the car had been moved some six or eight feet,
the elevator fell, precipitating the plaintiff and other men, who were
also on the platform, into the cellar below. The plaintiff sustained
injuries, and, having brought this action, recovered a verdict at the
trial, and from the judgment entered thereon, and from an order
denying a motion for a new trial, the defendant appeals.

The elevator was attached to cables at its four corners. It is
alleged in the complaint that the cause of its fall was the breaking
of a cable at one of the corners, and that such cable did break
was proven. This elevator was operated from what is called a
"worm shaft" on the east side and at the center of the elevator.
That in turn operated a gear wheel, and the gear wheel operated
a shaft running the entire length of the elevator, some 30 or 32 feet.
At each end of the shaft was a pinion, which worked in a bevel
gear on a shaft running at right angles to the one on which the
cable gears were fixed. On the bevel gear were two drums, located
at each end of the elevator on the south side and on the north side.
On each drum was a steel cable, which ran up to the next story
over a shift pulley, and down, and was attached to, the base of the
elevator—the floor of the elevator. The claim of the plaintiff, as
stated in the complaint, is that the defendant was negligent in failing
to furnish a reasonably safe apparatus upon which he was required
to work; the allegations being that the elevator and machinery were
defective and unsafe, and were unprovided with proper motive power
or appliances for safety, and were insecure, and unsuited for the
purpose to which the elevator was applied; and that it had no brakes,
clutches, claws, or any appliances to prevent it from falling, or to
insure its safety while being used as an elevator; and the elevator
and appliances, and especially the chain supports and wheels thereof,
were in a broken and defective condition, and not of sufficient strength
to support the weight usually put thereon; that such defective con-
struction and condition were well known by the defendant to exist,
and were allowed so to remain, but the plaintiff was wholly ignorant
thereof. The proof made by the plaintiff in his case in chief was to
the effect only that the elevator fell in consequence of the break-
ing of one of the cables, and the contention made by him at the

trial was, and now is, that proof of the breaking of the cables and of the fact of the elevator falling was sufficient to throw upon the defendant the obligation of explaining the occurrence and the cause of the fall in such a way as to exonerate it from liability.

It is unnecessary in this case to determine whether the maxim res ipsa loquitur applies; for, if it does not, although the proof on the part of the plaintiff may have been insufficient, when his case in chief was rested, to entitle him to a verdict, yet before the whole case was closed there was evidence introduced which required the submission of the issues to the jury for determination. The defendant gave evidence to show that the cause of the falling of the elevator was not the breaking of a cable, and satisfactorily proved that the mere fact of one of the four cables breaking (the others holding fast) would not be sufficient to cause the fall; that, if one cable alone broke, the elevator would merely sag a distance of some six inches at the corner at which the cable parted. But the defendant's evidence went further, and the attempt was made to show that the real cause of the falling of the elevator was the breaking of the gear wheel, and that such breakage was the result of there being in that wheel what is called a "blowhole,"—a hidden defect in the metal of which the wheel was composed,—and which could not possibly be discovered by any known process of inspection or examination. If that were true, the defendant would not be liable; but, in addition to that proof, it was brought out by the plaintiff that the gear wheel was defective in another respect, and one which could readily have been detected by inspection, namely, that there was a crack in the wheel observable from the surface of the wheel; that it was an old crack; that it was of such a character as to affect the strength of the wheel; and the contention was made that, assuming the fall to have been occasioned by the condition of this gear wheel, it was for the jury to say whether its breaking was not caused by the crack as well as by the existence of the blowhole. The elevator had been in use for some 11 years. The wheel was produced in court on the trial of the action, and was there for the inspection of witnesses, the jury, and the court. The existence of the crack was patent, and indications upon the wheel itself gave evidence that it was not of recent origin. There was enough before the jury to enable them to pass upon the issue as to the cause of the accident being the unsafe condition of the wheel. The attitude in which the case stood at the time of its submission to the jury was this: The defendant claimed that it had exonerated itself from liability by showing the existence of this hidden and undiscoverable defect to which the fall of the elevator could be attributed. On the other hand, the plaintiff claimed that, even if the cause of the falling of the elevator was not the breaking of the cable, but the breaking and falling of the wheel, he had shown a plain defect in the wheel, readily discoverable, to which the breakage could be assigned; and thereupon the court left to the jury certain specific questions of fact: "(1) Did the elevator fall solely because of the existence of the blowhole in the hub of the bevel gear wheel?" to which the jury answered, "No." "(2) If no, were there other defects, which reasonable inspec-

tion would have disclosed, which produced the accident? Answer. Yes. (3) If yea, was there such reasonable inspection? Answer. No."

It is unnecessary to consider any of the questions of law which have been discussed on this appeal. It is conceded that, if the existence of the blowhole was the sole cause of the accident, the defendant is not liable. It must further be conceded, as a general proposition, that where an appliance or machine obviously safe has been in daily use for a long time, and has uniformly proven adequate and safe, its use may be continued without the imputation of imprudence or carelessness. But if the crack in this gear wheel was a defect which could have been detected by inspection, and was the proximate cause of the accident, then the elevator, with its appurtenances, was not an obviously safe apparatus; and in this case the duty of inspection was cast upon the defendant. Here was a lift or elevator used for raising and lowering street cars, weighing some tons. Men had to go upon it to push those cars from it onto the tracks on the floors of the building in which the cars were to be stored. It required, from time to time, repairs, and certain repairs were put upon it. It had fallen before. Indeed, the defendant undertook, through its servants, the work of inspection; but the jury found that there was evidence authorizing the finding that there was no reasonable inspection. The existence of the crack could readily have been detected by the use of a hammer. One of the defendant's witnesses testified that he was in the habit every week of going around the elevator, and looking at it, and going upon a ladder and observing the wheels and the drums and oiling the machinery; but he did not use the hammer test on this wheel during more than a year before the accident occurred from which the plaintiff suffered. That was, as the jury properly found, inadequate inspection. The whole subject was one for the determination of the jury upon the issues of fact as they were submitted by the court.

There are no exceptions requiring consideration, unless it be that to the refusal of the trial judge to charge the thirtieth request of the defendant. There was some evidence given with respect to the absence of safety clutches or appliances upon this elevator, and the defendant claimed that the construction of the apparatus was such that it could be operated in safety without those appurtenances which are generally called "safety appliances." The court was asked to charge the jury that the omission of "other safety appliances or clutches from a freight elevator, which was not used or constructed for carrying passengers, from riding on which the railway company excluded its servants, and upon which servants had no reason to be, does not establish negligence on the part of the railway company." This request was properly refused, for it contains elements which in no way enter into the case. This was not an elevator from riding on which the railway company's servants were excluded, or upon which its servants "had no reason to be." On the contrary, servants of the railway company were required to be on the elevator, for it is proven that the way of removing the cars from the elevator

was by the company's servants going upon the elevator for that purpose.

The judgment and order appealed from should be affirmed, with costs. All concur.